Good morning, ladies and gentlemen. We have four cases on our calendar this morning. Three patent cases and a government employee case. The latter, plus one of the patent cases, will be submitted in the briefs and will not be argued. The first case that will be argued is Enri Collins et al., 2011-12-93. Mr. Dietrichs. MR. DIETRICHS Thank you, Your Honor. Good morning to all. May it please the Court, I'm here today on behalf of Whirlpool Corporation in a case that deals exclusively with objects like rejections. I'm here to minimize the Court's time and the fact that issues surrounding the rejection of Claim 1 are deemed to be representative of the main contentions for this appeal. I'm looking to spend the majority of my time in connection with that one rejection and I will leave it to the briefs for the remainder of the subcommittee. We were told that an initial question to ask in determining patentability is what did the applicant invent? Briefly, this invention is concerned with providing a retainer that is specifically shaped in the configuration of a ring and includes side attachment elements above a shelf on a refrigerator door. Isn't that almost 102 by Lemoyne or was it LeMond? I think this is the French name. LeMoyne? I'll take it as that? Okay. Absolutely. No, sir. As a matter of fact, LeMoyne has nothing more to do than providing vertically spaced shelves on a refrigerator door. What limitations does the claim are not in LeMoyne? First of all, in order to have the retainer functions to stop tall items from toppling over and it is ring-shaped having side attachment numbers. There is no ring-shaped element at all in LeMoyne. Well, but if you look on the picture for LeMoyne, I'm sure you're familiar with it, you look at what is designated 1112, it would snap in above the shelf and while it's not a ring, it's a U. So, the only apparent difference is the back support mechanism. It's very interesting because the fact of the matter is there is a lot of patents out there on retaining tall items from toppling over doors. We cited one in the background of our invention section. We cited many of them to the patent office, but not a single one was applied in this objection. LeMoyne has nothing but a stirrup, which is your 1112 there, that is used to embrace a shelf on a door. Well, I hear you saying that and I agree that the reference itself discusses 1112 embracing the shelf and offering sort of stabilizing support, but the CIO is free to interpret that reference however it wishes and it interpreted that U-shaped bracket as being a retaining wall and looking at the picture, it certainly is supportable. I can't say that's not supported by substantial evidence and that's the burden you have. So, it may not discuss using 11 and 12 for purposes of holding bottles in place, but the picture is quite clear. What do we do? A couple of things. First of all, it's not the rejection before us, but let's just assume that it is. If there is other art in the case that's going to look exactly like that U-shaped member, I patented some myself. We cited them to the examiner. Little knobs on the sidewall so you can actually adjust the U-shaped member. It pivots and it's for retaining tall food items from falling off a shelf. You're not helping your case. I am because the examiner had these before them and they determined that there was no way to use those. Well, they made a bad rejection, but at the end of the day, if they had made this rejection, it's practically a 102. So, what should occur here? It is not a ring-shaped member and that is a... I mean, it doesn't... A U versus a ring? I mean, what's the difference? There's various great things because of the U-shaped member. If you can imagine the way these things are mounted, there are these... The liners on the door are thermal-formed and they have these little ledges all along the side where you put the shelves. Well, this ring is basically a bucket that we're cutting off the top inch and a half of it and it can lift up, pull off as a ring. It's very sturdy and it mounts the same way shelves do in the whirlpool arrangement. It's not something that you could have just separate holes for pegs such as that. First of all, with a ring, you can't mount it the way you do that stirrup because those arms have to flex in in order for those pins to go in. A ring, you couldn't do that. You couldn't have pins because it can't flex. So, you couldn't possibly mount a ring the way you do in Lemoyne. But still, you also can't mount it vertically and use it exactly the way you would a shelf. You'd have to have a whole different type of mounting for that. Isn't the novelty of the invention that this ring prevents tall food items from falling down? Yes. Why wouldn't this U-shaped apparatus do the same? I am not standing here before you to tell you that there aren't many. As I said, there are other U-shaped members, maybe just a straight bar. That's out there too. We've cited at least 15 tall item retainers that are out there. This is a different way to do something to retain tall food items. There are others out there too. As every one of those were patentable, there should be two as long as the structure is not found. Have you read KSR? Have I read KSR? Yes, I have. I agree with all of it. I'll tell you one thing about this that gets me with KSR in this case. It's not just any reason. It's an apparent reason. I have a serious problem with taking Lyle, Lyle et al., the first one and putting it on a door to begin with. It seems to me that if you would look at Lyle and what the patent office is doing and say, look, you might want, as the examiner says, some additional storage capacity on the door. Well, you look at Lemoyne, which has shelves for putting things on the door. Why not put the Lemoyne shelves on the door? You've done it. But no, we want to take that Lyle shelf and move it to a door. I just don't see the apparent reason to do that. There may be a reason. I could make up a reason. But would it be apparent? No. If you're looking at Lemoyne, if I had these two in front of me and I wanted to increase the storage capacity of the Lyle shelf, which already has plenty of storage in the fresh fruit department, and I wanted to put some more storage on the door, and Lemoyne has storage on the door, I'd use the Lemoyne storage. Suppose I were to agree with you that Lemoyne has just no business being this rejection, that this is just an awful rejection. What happens then if I think that Lye practically anticipates your claim? What do I do? What's in the best interest of your client? What should I do as a judge? How do I resolve this case? Well, I'll tell you. First of all, Lye is owned by our client, okay? And I drafted Lye. This was done by RISD, Rhode Island School of Design students, came up with this idea. The whole idea of Lye is to have a shelf that is typically fixed in there, or maybe there'd be a sliding shelf, and pick it off and use it as a serving tray. Much like, if you, bed and breakfast type tray. I'm sorry. I said the wrong one. No, I think, why is he going back to that one? I meant Lemoyne. I said the wrong one. Oh, okay. I said, what if I think it's, no, no, I think you're right about Lye. I think Lye is a dumb piece of prior art. I can't imagine why. You didn't lie. You made a mistake. Thank you. But Lemoyne, I mean, it just seems so clearly on point. And you might be telling me there's lots of other references like this, too, but quite frankly, in my mind, that does not help your case. So what do I do then as a judge? I think that the rejection made against you isn't exactly right, but one of the two references they cited is just so clear on its face. It practically ends your claim. So what happens? I think Lemoyne was picked up for two reasons. Now, I don't want you to dispute with me why I'm wrong. I want you to tell me what I should do in that case. Are you going to tell me I should vacate and remand to the PTO just to institute a slightly different rejection against you that will absolutely hold water on appeal? Or do I just go ahead and affirm? Well, please tell me where you're going with this because where do you get the ring shape? And if you do get ring shape, how do you mount a ring shape like Lemoyne teaches to mount? It's physically impossible. Well, you know what? None of that teaching how to mount is part of the claim. So it's irrelevant for purposes of obviousness. All I need to do is look at the claim. The claim absolutely has a ring shape, but what's the difference between a ring and a U? The only purpose described in the patent is to hold the bottles upright. Both of these designs would equally hold the bottles upright. The back member, quite frankly, is advantageous for you in terms of the divider, but you stood up today and said we're going to only talk about Claim 1. So the back member portion of the ring is irrelevant to simply holding the bottles in shape. The back wall already does that. So what do I do with Claim 1? I do not see that, first of all, Claim 1, in addition to requiring a ring, has the sidewall attachments. So we're not saying it can be attached to this anyway. And I know Lemoyne attaches to sidewalls, but you cannot apply those sidewall attachments to a ring. And in addition, if you were to take off Lemoyne, you have to bend it, flex it out, and take out that stirrup. With ours, if you've ever seen these things, they just flip right off. They lift right off. The back wall itself, when I'm saying lift right off, the lugs that attach shelves, if you've ever seen your shelves in your refrigerator, if you didn't have any weight on those shelves, they just flip right off very easily. And the same thing would go with this ring. But you take a ring and have it hit on the sides and all the way on the back wall, and you have a much better friction fit, a tighter fit that it's harder to just flip off. And when you want that ring to stop things from toppling off which are going to hit it, you want it to be very sturdy, and you want it to be able to not just flip right off. Yet, it's very easy to adjust vertically. If I had to put a very large wine bottle, I could move it up a notch. And it's going to be very sturdy. That whole back wall is going to provide a nice fit. But none of that is part of the claim. Yeah, I agree. You could absolutely move it up a notch because it fits right into the grooves that are already part of the inside liner of the refrigerator door. But none of that is part of the claim. So it's not relevant to the obviousness analysis. Well, I think it is part of the claim in the sense that we have a retainer, and you're interpreting the retainer in light of the specification. It includes a ring, so it has to have a back wall, and it has the side mounts. So all that structure is there. Now, the question is, do I recite the function? No, the function might not be listed in the claim, but the structure that performs that function is there, and so I wouldn't disregard that back wall because I don't sit there and describe all the different functions that that back wall might help perform. It seems like you're arguing that the novelty of the invention is the manner in which you can adjust the shelves, not that the ring prevents tall liners from falling out of the door. But yet, that's what the claim recites. We think that of all the art that's out there, on toppling things over, there is nothing out there that is ring-shaped like this. Labeled for the easy adjustability, and if you had it U-shaped, you could have mounted it on lugs that are on a stand in a refrigerator, just like you would your shelves. It would not even... You couldn't. It would just flop right down. Mr. D, if you wanted to save some of the bottle time, you can use it further, or save it as you wish. Okay, just very quickly for a second, I would like to say that the purpose for the examiner of increasing the storage capacity of the door is not a good reason for making this combination. When you put Lyle on the door, and that extra storage capacity is a shelf, and then later on for the rejection, he takes that shelf and discards it, well, you've taken away your whole reason for doing the combination. Also, I think the board clearly gave a different reason. They said to retain tall food items on a shelf. That I don't understand at all. That's just from our spec. I will just save this for my time. We will save it for you. Thank you. Mr. LeMaker. May it please the Court, Your Honor. Our number one point that I'd like to make is, as the panel just mentioned, many of these features that are in the claim were known. His own specification admits that shelves on refrigerator doors were known. Retainers on refrigerator doors were known. And it really just boils down to, as the specification alleges, that the only unique aspect of what they've got here is the fact that it's adjustable. And when we cite Lye and Lemoine, the examiners had those two references, they had a vertical adjustability feature. The problem was with Lye, the base reference, it wasn't mounted on the door. And the examiner found a reason to mount it on the door. The examiner's reason was, in part, to increase storage. Because it's well known to put shelves on doors. How are we going to get a shelf that's so deep as the one that we see in Lye and put that on the door? I mean, it just... I mean, it doesn't seem, it doesn't make any sense at all. It's hard for me to understand how this can be a reference, this reference is prior. And I don't think the examiner made that finding, Your Honor, before the board. I think they recognized that the shelf sizing would have to be resized to fit on the door. They acknowledged that. Well, that's not the only problem. It doesn't have a lip. Who's going to put a flat shelf on a door? You pull the door open, all the stuff comes flying off, it falls on the floor! Absolutely, Your Honor. It makes no sense. I tell you, I think this is a terrible rejection. I think you all have done a really sloppy job. And I'm just going to say what I think right now, which I probably shouldn't do, but, you know, I mean, I know you've got a big backlog, I know you're adding all these new judges. This is ridiculous. This is a bad rejection. There's a good rejection you could have made, but this isn't it. And, Your Honor, there's no dispute that we could have made a stronger rejection, but we still believe that all the evidence in this record, cited by the examiner as well as cited by appellant, really shows that this claim is just not patentable, and the rejection should be sustained for that reason. You're right. There could have been a better rejection. There's no doubt that a better rejection could have been made. In fact, if you look at the method claims, which is Claims 14 and 19, there's an additional reference, Rundell, added to that rejection, and the Rundell reference has the same idea, shelves on doors with retainer straps on the bottom of the door, and they even talk about the exact step that the examiner found here, popping out the inner part of the upper shelf so you could put a tall item on it to retain it. So we have to decide this case on the basis of the information that you used in order to make a rejection on the prior art, and now you're telling us that you did not use appropriate prior art. Well, I would say that, Your Honor. I think it's sustainable. I think there's evidence of record in this rejection that's sustainable. But as Judge Moore pointed out, the agency could have made a better rejection, absolutely. But if the claim is dead, the claim is dead. But based on what? You could have made a better rejection on something else, on another prior art? Well, I think if you look at Claims 14 to 19, the method claims, there's a third reference added called Rundell, and that would have been a significantly stronger rejection of this apparatus claim. The examiner didn't feel he needed that third reference because he felt here he had the structure. He had the open ring, just like we talked about, and all he wanted to do is remount a typical conventional shelf on the door of the refrigerator, and the examiner pointed out that there's plenty of evidence out there that says that's known to do that. Therefore, it would have been obvious to mount typical conventional shelves like the ones that are disclosed in the lie, mount them on a refrigerator just like Lemoyne did, and then once you've got that structure, yes, using the upper circular ring would have been good. That may or may not be true. I'm going by the record that we have here, and the rejection was based on two references to prior art, and I'm looking at that, and I'm having a hard time seeing that that part supports a rejection. Well, the first reference that the examiner pointed to was lie, the one Judge Moore referred to. On the inside cover of page 6, there's a picture of a lie reference with the shelving component showing all of the structural aspects of this claim. The only thing that's actually missing from this is it's not mounted on the door of the refrigerator. That's what the examiner said. That's what he found. Page 6, please, Your Honor. But you're still trying to argue lie, and I know you have to, but I understand the position you're in, and I don't mean to express my frustration with you, but I don't understand why this rejection wasn't just straight made on Lemoyne. You could have made it on Lemoyne and nothing else, and you could have just said the only thing missing. Am I right? The only thing missing is the back piece of plastic that turns it from a U into a square or a ring. I think that's accurate, Your Honor. Well, I mean, I think that's pretty close, that the back piece is. What else is missing from the claim? I mean, I'm not sure that Lemoyne teaches all of the vertical adjustability features of the lie reference if you look at the back. Well, wait, but that's not part of the claim. Vertical adjustability is not part of the claim. It does say, I believe the claim does mention the ability to adjust it. I think that that is an aspect of the claim, so it could be that that's the reason why the examiner did need to go look for the reference. And really, you're right. Here I am trying to defend that rejection, which we've already said we think is not the strongest rejection, but the bottom line, as Judge Rayner pointed out, that's the rejection that this Court is reviewing. So why don't you sometimes take things like this and go back? Go back to the board. Go back to the examiner and say, make the right rejection and bring it up on appeal. Because you know what's unfair? What's unfair is he had to spend all his brief arguing why this is not a good rejection, and so you cause a lot of unnecessary expenses by process. I think we do take cases back, Your Honor, but in this case, although we could have made a stronger rejection, a softer rejection, all rejections aren't perfect. The question is, are they sufficient to show that this claim is unpatentable? And we believe it is, and that's why we're here defending it today. You think it's probably unpatentable in Lemoyne, and adding lie is just surplusage, it sounds like. I think that either rejection, that's a hypothetical rejection that's not here today, and that could have been made, yes. But I also believe that this rejection is sustainable as well. However, I mean, if the Court doesn't agree with us, we are faced with that. But we do take cases back when we think we can't defend it. We believe this is defensible. We don't say it's the strongest possible rejection. We think there are other rejections that are stronger, but we do believe it's defensible. And if we look at the examiner's findings and the Board's findings, they do point to all of the structural features of this claim, and the only thing that they have to get to is, would you put this structure on the door of a refrigerator? That's the only step necessary for the obviousness step. And here, the examiner did point to reasons. One reason was, a lot of refrigerator designers like to have shells on doors, as evidenced by all the prior art out there. Why? Storage on the door. It improves the refrigerator. Another point that they pointed out, the Lemoyne reference teaches another way to integrally mount shells on doors. That would help improve the mounting capacity or simplify the construction for mounting. So the examiner did point to reasons, and they did make findings on why Norton-Harrison did it. And it's true, there likely are better rejections, but we still believe this rejection renders the claim path. The claim itself is, I guess the full claim is on A41, and you suggested that there was something about the adjustability in this claim, and I can see nothing. I'm reading the claim word for word, and the only thing I see is it says it's spaced vertically above the shelving unit. But I don't see anything about adjustability, maybe in dependent claims or something. It could be, well, removably attached to the liner, the position stays vertically above, you're correct. It could be in the dependent claims is where the vertical adjustability comes from. Nevertheless, what the examiner did was formulate a rejection that applied to all of those. Because as you understand, in the beginning of the prosecution, the examiner was rejecting all of the claims, not just this one claim. It's just that it's percolated to this one claim here at this level. But throughout the whole prosecution, the examiner was worried about all of these claims. So he had to keep that in mind. So this vertical adjustability aspect, albeit it came from a dependent claim, he had to be concerned with that when he formulated the rejection. As a result, we've got lye in Lemoyne. You're right, there could have been a better rejection. Nevertheless, we believe this is sustainable. And the only thing I'd like to point out before I sit down is keep in mind claims 14 through 19, the method claims. The method claims do have an additional reference, and the additional reference is Rundell. And Rundell does specifically teach this exact step that the examiner talks about, that if I've got two shelves on top of each other and the upper shelf will pop out, I can use the remaining ring as a retainer. So there's evidence in the record that supports that finding by the examiner. Remind me, is that on appeal? For some reason, I'm focused exclusively on claim one, but that might be wrong. You're right, Your Honor. Claim 14 through 19 is on appeal. But sort of lumped in with claim 11. But it's sort of lumped in. But keep in mind, claim 14 through 19 does have an additional reference added to that rejection, the Rundell reference. And just so you can be aware of it, it's in the record at page, I guess, A-207. That's where the Rundell reference is. And if you look at the examiner's answer and the board decision, the examiner's answer starts at page A-420 and 421. You will see that the Rundell reference is an additional reference added to the method rejection. And the reason is the method claim has the additional aspect that the step of putting a tall item on a shelf and removing the inner shelf of the upper shelf, that actual step is taught by Rundell. Where the examiner said, with respect to the apparatus claim, he didn't need that because just the structure had to be capable of being used that way. So if there's anything further, I'll sit down here. Thank you, Mr. DeMarco. And Mr. Diederich has, I think, two minutes for rebuttal. 210. Very briefly, a few comments on what he was talking about. As far as Rundell goes, first of all, we're starting still with the combination of Lava, Booze, and Wine, and they're adding Rundell. Okay? Second of all, the board specifically stated that the method claim was rejected based on the reasons set forth in Rejection of Claim 1. We brought to them, after that, a question to say, well, what about Rundell? You're not even relying upon Rundell. They said, no, we're not. Okay? And the last thing I'll say is, I don't believe that if you... Just to make sure I understand you, the board in Rejection 14 to 17 or 18, whatever it was, didn't actually rely on Rundell? The rejection on appeal is only Lye and Lemoine? That's right. As a matter of fact, we brought it to their attention, and they said that we are rejecting for this. You'll see, it's almost a one-liner. We're rejecting that claim for the same reasons set forth in Respect to Claim 1. And that was their statement on it. The last point I'd like to make is, you may feel a certain way about how Lemoine might be applicable to Claim 1. It's not the rejection that we were fighting. I don't know what the claims would have ended up if there was a different rejection. I don't think that it would be obvious to make Lemoine U-shaped nor would you be able to mount a U-shaped one in a way Lemoine does. In any case, it's not the rejection that's before us, and I respectfully request that that rejection be considered in your decision. Thank you, Mr. D. Reckless. Thank you very much. We'll take the case under advisement.